UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEONARDO ANTONIO
ENRIQUEZ VALDES,

        Petitioner,

    v.                          Case No.:  2:26-cv-00317-SPC-DNF

ICE FIELD OFFICE DIRECTOR *et al.*,

        Respondents,

_____/

## OPINION AND ORDER

Before the Court are petitioner Leonardo Antonio Enriquez Valdes's Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 3).  For the below reasons, the Court grants the petition.

### A. Background

Enriquez Valdes is a native of Cuba.  He entered the United States on July 19, 1995, and was approved as a legal permanent resident in January 1998.  In February 2003, Enriquez Valdes was convicted of drug charges.  When his prison sentence ended in July 2005, he was transferred to the custody of Immigration and Customs Enforcement ("ICE").  ICE released him from custody on August 5, 2005, and did not commence removal proceedings until it issued a notice to appear on April 9, 2009.

On January 3, 2014, an immigration judge ordered Enriquez Valdes removed to Cuba but deferred removal under the Convention Against Torture. ICE issued an order of supervision on October 31, 2016. Enriquez Valdes has complied with all terms of supervision. When he reported to the ICE office in Miramar, Florida for a check-in appointment on November 10, 2025, ICE revoked the order of supervision and detained him.

On January 14, 2026, the Department of Homeland Security ("DHS") notified Enriquez Valdes it intended to remove him to Mexico, and ICE transferred him to Texas for that purpose. But on January 26, 2026, Mexico denied Enriquez Valdes entry for medical reasons. ICE transferred Enrique Valdes back to Alligator Alcatraz. Enriquez Valdes challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Immigration and Nationality Act ("INA").

### B. Jurisdiction

Before addressing the merits of Enriquez Valdes's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas

> corpus provision, and sections 1361 and 1651 of such title,
> no court shall have jurisdiction to hear any cause or claim
> by or on behalf of any alien arising from the decision or
> action by the Attorney General to commence proceedings,
> adjudicate cases, or execute removal orders against any
> alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies

only to three discrete actions that the Attorney General may take: her 'decision

or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal

orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471,

482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did

not interpret this language to sweep in any claim that technically can be said

to 'arise from' the three listed actions of the Attorney General.  Instead, we

read the language to refer to just those three specific actions themselves.").

"When asking if a claim is barred by § 1252(g), courts must focus on the action

being challenged."  *Canal A Media Holding, LLC v. United States Citizenship

and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

　　The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including
> interpretation and application of constitutional and
> statutory provisions, arising from any action taken or
> proceeding brought to remove an alien from the United
> States under this subchapter shall be available only in
> judicial review of a final order under this section.  Except
> as otherwise provided in this section, no court should have
> jurisdiction, by habeas corpus under section 2241 or title
> 28 or any other habeas corpus provision, by section 1361 or
> 1651 of such title, or by any other provision of law

> (statutory or nonstatutory), to review such an order or such
> question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Enriquez Valdes does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Enriquez Valdes challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Enriquez Valdes's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

## C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period,

which begins when the removal order becomes administratively final. *Id.*
Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably
foreseeable, the court should hold continued detention unreasonable and no
longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not
practically attainable, detention no longer serves its statutory purpose of
"assuring the alien's presence at the moment of removal." *Id.* at 699. The
Court found it unlikely Congress "believed that all reasonably foreseeably
removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of
uniform administration in the federal courts," it established a "presumptively
reasonable period of detention" of six months—the 90-day removal period plus
an additional 90 days. *Id.* Courts use a burden-shifting framework to judge
the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe
> that there is no significant likelihood of removal in the reasonably
> foreseeable future, the Government must respond with evidence
> sufficient to rebut the showing.

*Id.* The presumptively reasonable six-month period for detention pending
removal commences at the beginning of the removal period. *Akinwale v.
Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention
has expired, *Zadvydas*'s burden-shifting framework applies. Enriquez Valdes

has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE itself presumably made that determination when it issued an order of supervision in 2016. Enriquez Valdes may not be removed to Cuba, and ICE's attempt to remove him to Mexico was unsuccessful. The burden thus shifts to the respondents. They do not argue there is a significant likelihood of removal in the reasonably foreseeable future, and their evidence does not indicate they have even identified a third country for removal.

### D. Conclusion

The Court finds no significant likelihood Enriquez Valdes will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, DHS can detain Enriquez Valdes to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

Leonardo Antonio Enriquez Valdes Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Enriquez Valdes within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 2, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record